IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 3:11po00131 |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| RYAN ADAMS, | : | |
| Defendant. | : | |

**DECISION, ENTRY, AND ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS (Doc. # 7)**

## I. INTRODUCTION

On December 16, 2009, while performing his duties as a law enforcement officer in Area A at Wright-Patterson Air Force Base, Senior Airman Joseph Sedon pulled over a blue Chevrolet Lumina being driven by Defendant Ryan Adams. Sedon initiated the traffic stop for suspicious activity. After initiating the stop, a check of Adams' license status indicated he was driving with a suspended license, and accordingly, Sedon cited him for violation of Ohio Revised Code § 4510.12. Adams has subsequently filed a motion requesting this Court suppress all evidence obtained during the above-mentioned traffic stop.

On January 4, 2012, the Court held a hearing on Defendant's Motion to Suppress (Doc. #7). This matter is now before the Court upon the suppression hearing,

Defendant's Motion to Suppress (Doc. #7), the Government's Response (Doc. #9), and the record as a whole.

## II. FACTUAL FINDINGS

At the hearing, the Government produced one witness: Senior Airman Joseph Sedon. Based on his testimony, the Court finds the facts to be as follows:

At approximately 1:00 a.m. on December 16, 2011, while patrolling Area A at Wright-Patterson Air Force Base, Senior Airman Joseph Sedon noticed a blue 1994 Chevrolet Lumina stopped at a traffic light at the intersection of Gate 1A and State Route 444 for approximately 15-20 seconds after the light had turned green. As a result, Sedon entered the vehicle's license plate number into the Law Enforcement Automated Data System (LEADS) and initiated a system search while he continued to observe the vehicle. During this time, Sedon saw the passenger turn and look back in his direction one time. Sedon then noticed the vehicle, traveling at approximately 15 m.p.h. in a 25 m.p.h. zone, turn into the entrance to Gate 1A. This gate, however, closed at 6 p.m.

Next, Sedon watched as the vehicle sat at the gate for approximately 30 seconds before completing a u-turn, turning right, and continuing to travel westbound on State Route 444. Sedon followed and initiated a traffic stop. After the vehicle was stopped, Sedon testified that information came back from LEADS that the owner of the vehicle, Ryan Adams, had a suspended license. Sedon approached the vehicle, inquired into the activities of the driver and his passenger, ran a background check after obtaining their identification, then cited the driver, Ryan Adams, for driving under a suspended license,

2

in violation of Ohio Revised Code § 4510.12. Sedon did not cite Adams for any other traffic violation, and testified he did not observe any other traffic violation committed. This testimony is also consistent with the statement provided by Sedon on the traffic citation he issued to Adams indicating that he "initiated a traffic stop for suspicious activity and identified the driver as Ryan J Adams by his Ohio identification card. . . . driver's license status is suspended . . . . The violator was cited and released."

Defendant Adams now seeks to suppress all evidence obtained during this traffic stop because his "initial seizure, the officer's observation of him in the driver's seat after being stopped, and all statement's made by [him] violated his right to be free from unreasonable search and seizure guaranteed by the Fourth Amendment to the United States Constitution." (Doc. #7).

### III. ANALYSIS

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)). "Nonetheless, if a law enforcement officer has reasonable suspicion that criminal activity is afoot, the officer may conduct a brief traffic stop for investigative purposes to confirm or dispel his suspicions." *United States v. Chandler*, 437 Fed. Appx. 420, 425 (6th Cir. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).

A two-part analysis is used in determining the reasonableness of an investigatory *Terry* stop. *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). The first step, and

only one relevant in this case, requires that a court determine "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *Id.* Reasonable suspicion "requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard." *Chandler*, 437 Fed. Appx. at 425 (quoting *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008)).

Turning to the facts of this case, it is important to note that Sedon testified he did not witness Adams commit any traffic violation, but initiated the stop solely due to suspicious activity. Again, prior to initiating the traffic stop Sedon witnessed the following: the vehicle was stopped at an intersection for 15-20 seconds after the traffic light changed to green; a passenger in the vehicle turned and looked backward once; the vehicle was traveling 15 m.p.h. in a 25 m.p.h zone; and, the vehicle pulled into a gate that was closed, sat for approximately 30 seconds, then made a u-turn and continued in the same direction previously traveling. Such actions fail to provide a reasonable basis for Sedon to initiate the traffic stop.

Although this Court fully understands Sedon's sincere testimony regarding his duty as a law enforcement officer to keep WPAFB safe, there was no testimony elicited at the suppression hearing to indicate Sedon believed the vehicle being driven by Adams was being operated in an unsafe manner. Sedon never testified that he witnessed the vehicle swerve or otherwise move erratically, impede traffic in any way, or that he

4

believed the driver may be having a medical emergency, falling asleep, or under the influence of alcohol or drugs.  In fact, Sedon very clearly testified that he did not witness any traffic violations committed by Adams before initiating the traffic stop.

In addition, while it is understandable that a heightened level of security may exist around a military base, the vehicle's movements, as well as the actions of its occupants, did not provide a reasonable basis for Sedon to believe Adams or his passenger were, or were about to be, engaged in any sort of criminal activity.  For example, Sedon did not testify the vehicle attempted to evade him, was previously witnessed in the area, or had otherwise appeared to be taking photographs of the base or involved in some type of surveillance.  Sedon also did not testify that any intelligence or other reason existed to believe the type of vehicle, or the occupants therein, posed a specific security threat or concern to WPAFB.  In addition, when the vehicle pulled up to Gate 1A, which closed at 6 p.m., none of the occupants emerged from the vehicle, nor did the vehicle stay there for any longer than would have been necessary to switch gears and complete a u-turn.  Likewise, because the gate was closed and no guards were present, it is clear that Adams did not make the u-turn in front of the gate as a way to avoid the need to identify himself to, or otherwise have contact with, law enforcement personnel.

Finally, while the LEADS search conducted by Sedon did indicate that the owner of the vehicle currently had his driving privileges suspended, Sedon testified, and the traffic citation indicates, that this information was not obtained by Sedon until <u>after</u> he already initiated the traffic stop for "suspicious activity."  Thus, while this information

may have been reasonably relied upon in conducting an investigatory stop of Adams' vehicle had it been known prior to initiating the traffic stop, *see United States v. Butcher*, 1993 U.S. App. LEXIS 19382 (6th Cir. 1993), the information cannot form the basis for the traffic stop in this case because Sedon simply was not aware of Adams' lack of driving privileges until after the stop had already been initiated based on suspicious activity. Because, based on the totality of the circumstances, Sedon was without reasonable suspicion that Adams or his passenger were involved in, or about to be involved in, any criminal activity, the traffic stop was improper, and Defendant's Motion to Suppress is well-taken.

**IT IS THEREFORE ORDERED THAT:**

Defendant's Motion to Suppress (Doc. #7) is GRANTED.


January 12, 2012                                                             s/Sharon L. Ovington
                                                                                         Sharon L. Ovington
                                                               United States Magistrate Judge